considered before finally reaching a conclusion in matters of this character. Relationship, and even the expressed desires of the parents, must give way to the rule that the welfare of the child in the last analysis must be the guide in matters affecting the latter's guardianship. People ex rel. Pruyne v. Walts, 122 N. Y. 238, 25 N. E. '266; Ullman v. Ullman, 151 App. Div. 419, 135 N. Y. Supp. 1080; Matter of Cross, 92 Misc. Rep. 89, 155 N. Y. Supp. 1020, and cases cited.

The petitioner is married, has two minor children of her own, and lives with her husband in an apartment of five rooms in the city of New York. David Curtin, the uncle of the infants, also has a family consisting of his wife and children, and resides in the city of New York. Margaret Curtin, an aunt of the infants, is a trained nurse by profession and is unmarried, and Nora C. Kennedy, the remaining paternal aunt, being the one who resides in Syracuse, is married and childless. Considering the matter, therefore, from the standpoint of the welfare of the infants, I reach the conclusion that the petition should not be granted upon this ground. It necessarily follows that the applications of the petitioner must be denied.

[6] With regard to the petition filed by Nora C. Kennedy for the appointment of David Curtin as guardian of said infants, I believe that the court is not limited to naming the person for whose appointment the petition prays. Code Civ. Pro. § 2649; Ledwith v. Ledwith, 1 Dem. Sur. 154; Matter of Wyckoff, 67 Misc. Rep. 1, 124 N. Y. Supp. 625; Estate of Van Dewater, 27 Wkly. Dig. 314.

The children, in addition to their personal property located in the city of New York, it appears, will become entitled to share in a pension which will be paid to them in this city. For that reason I think it advisable that David Curtin, the uncle, should be named as the guardian of their estates, and he will be appointed accordingly. From the testimony before me, I think that the best interests of the infants require that they should be in the custody and care of their paternal aunt, Nora C. Kennedy, who resides in Syracuse, which from all the evidence before me I conclude was the wish of their deceased father, and she will accordingly be appointed guardian of their persons

Decreed accordingly.

---

(93 Misc. Rep. 408)

### In re KAUFMAN.

(Surrogate's Court, New York County. January 10, 1916.

GUARDIAN AND WARD ⬅️15—BOND OF GUARDIAN—NECESSITY.

Notwithstanding Code Civ. Proc. § 2650, authorizing the surrogate in his discretion to dispense with a bond by the guardian of an infant where the property does not exceed $2,000 in value, no guardian should be designated without full and ample security.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 56–64; Dec. Dig. ⬅️15.]

Application in the matter of Arthur E. Kaufman for order dispensing with security by guardian. Application denied.

Olcott, Gruber, Bonynge & McManus, of New York City, for petitioner.

FOWLER, S.  This is an application under section 2650, C. C. P., of the new Surrogates' Law of 1914, for an order dispensing with security by the guardian of an infant.  When this section of the new Surrogates' Law was first enacted I expressed my grave concern and fear that, if generally construed and applied, that section would operate harshly and to the discomfiture of infants coming before this court.  Estate of Seiffert, Surr. Decis. 1914, p. 1135; Matter of Hirshfield, 88 Misc. Rep. 399, 151 N. Y. Supp. 846.  The Supreme Court had arrived at a similar conclusion in so far as infants before that court were concerned.  Haug v. Hewitt, 87 Misc. Rep. 67, 150 N. Y. Supp. 236; Benson v. Siemons, 92 Misc. Rep. 509, 156 N. Y. Supp. 1.  I am aware from the reports that such decisions were not approved by some of my learned confrères.  They argued that the ease and benefit of poor people who could not afford bonds should be first considered, and the usual criticism of reactionary construction of this beneficent law was not lacking.  In imitation of the practice of some other counties, it appears that printed books were prepared in this county to facilitate such applications and subsequent proceedings by such guardians for maintenance allowances to be made out of the estates of such infants.  Of the preparation of these books I was not made aware.  But I am responsible in some measure for their continuance, because I consented to give them a trial.

I was never impressed by the arguments in favor of that construction of the new law which might enable the guardians of poor children to make way with their little estates; nor was I impressed by the wisdom of short cuts to allowances for maintenance.  The protection suggested by the act as a substitute for security seemed to me hollow and grossly defective, as has proved to be the case.  After a year has elapsed since the new law went into operation, time, that great solvent of all evils, has justified all my apprehensions and vindicated every word of my most frank criticism.  I am now advised by the guardian clerk of this court that in some instances these guardians, giving no security under the law, have boldly walked off with the infants' estates, or where sums have been allowed such guardians for the infants' maintenance, these suretyless guardians have converted the allowance to their own use and failed to apply the same, or even a part thereof, to the use of these poor infants.  Forty-six per cent. of the guardians named without bonds under the new law are in default. If we were to call them to account, having given no security, they would not respond to the decree, and to commit them to the common jail for disobedience would be a great public charge.  These helpless children thus defrauded are now beginning to complain aloud to this court; but their cries, to my sorrow and regret, must this time fall on a deaf ear, as where no bonds have been required of the guardians, they are, in every instance, personally irresponsible.  It must be apparent that such a state of things cannot be allowed to continue in an orphans' court.  I shall hereafter, under no circumstances, no matter .

how much importuned, or annoyed, or reprehended, designate any guardian for any infant without full and ample security; nor will I hereafter entertain any short application for maintenance, written in any office book of forms, or formulated in any other manner than that anciently employed in this court before the new law went into effect. Of this I am finally and firmly resolved.

Application denied.

(93 Misc. Rep. 384)

### In re McTEVEY'S ESTATE.

(Surrogate's Court, Saratoga County. January, 1916.)

1. COSTS ⬅️277(1)—REMEDIES FOR COLLECTION—STAY OF PROCEEDINGS.

Where a motion to vacate an execution and restrain an execution sale was denied in the Supreme Court, with costs, for lack of jurisdiction, the fact that the 10 days allowed for payment of the costs has not expired does not affect the right of the adverse parties to a stay of a new motion in Surrogate's Court for the same relief until payment of the costs of the former motion.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 1048, 1058; Dec. Dig. ⬅️277(1).]

2. COSTS ⬅️277(6)—REMEDIES FOR COLLECTION—STAY OF PROCEEDINGS.

Code Civ. Proc. § 779, providing for stay of proceedings till payment of costs of a motion, applies to a renewal of a motion in the Surrogate's Court for the same relief which has been denied, with costs, in the Supreme Court.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 1055, 1056; Dec. Dig. ⬅️277(6).]

3. EXECUTION ⬅️163—VACATION—MOTION.

A preliminary objection to a motion to vacate an execution and restrain a sale thereunder, on the ground that the order to show cause, by which the application was instituted, was granted by the county judge of another county, is obviated by the making of an order by the Surrogate at the return of the show-cause order returnable forthwith on the motion papers.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 473–483; Dec. Dig. ⬅️163.]

4. EXECUTION ⬅️161—VACATION—GROUNDS.

Where a judgment admitting a will to probate allowed costs to the proponent of another will, an execution for such costs against the interest of an administratrix appointed after the probate, personally, in lands formerly belonging to the decedent, should be vacated.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 467–471; Dec. Dig. ⬅️161.]

5. EXECUTION ⬅️163—VACATION—CONDITION IN ORDER.

Where a motion to vacate an execution and restrain an execution sale has been denied in the Supreme Court, with costs, for want of jurisdiction, and on renewal of the motion in Surrogate's Court it is determined that the movant is entitled to the relief asked, but the adverse party asks for stay of proceedings till costs on the former motion have been paid, the renewed motion will be granted on condition that the costs of the former motion be paid within three days after service of the order; otherwise, the application will be dismissed, with costs, with leave to renew the motion on payment of costs of all proceedings.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 473–483; Dec. Dig. ⬅️163.]

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes